McGuane, J.
This is a contract in which the plaintiff/appellee (hereinafter referred to as “Eismann”), sought to recover a $15,480.00 brokerage commission on the sale of defendant’s real estate based upon the annexed “Exclusive Right To Sell Contract”, marked Exhibit “A”. The plaintiffs Complaint alleges as a basis for the commission, the fact that the defendant sold the property within ninety (90) days after the expiration of the Contract to Steven Schoenfeld, a person to whom the Buttondown Lane property had been presented or shown during the term of the Contract.
The defendant’s Answer denied that the plaintiff was entitled to a commission based upon the sale during the ninety (90) day extension because the Contract contained a Rider #1 dated May 24, 1986, a copy of which was not attached to the Complaint. The Rider is significant because it specifically altered the condition upon which plaintiff was to receive a commission if a sale occurred within ninety (90) days after the expiration of the Contract. The Rider, annexed hereto as Exhibit “B”, stated in pertinent part:
Upon the expiration of this Exclusive Right To Sell Contract, broker shall submit to seller, via certified mail and within five business days, a written list of all persons or entities to whom said property had been presented or shown during the term of this contract.
A brokerage commission shall be due if said property is sold within 90 days by the undersigned to only those persons or entities contained within the above mentioned list.
The plaintiff alleges that the terms of the original contract are binding, whereas the defendant contends that the terms of the Rider #1 superseded the pertinent provisions in the original Contract, and that since the plaintiff failed to comply with the terms of the Rider, she is not entitled to a broker’s commission.
The Court found for the plaintiff in the sum of $16,200.00 plus interest in the amount of $2,386.92 and costs of $30.00. At the trial, held in Great Barrington, Massachusetts on December 16, 1987, there was evidence tending to show:
1. The exclusive right to sell contract, including Rider # 1 is a valid contract.
2. The parties specifically altered the terms of the exclusive right to sell contract by adding Rider #1.
*100 3. Rider #1 altered the terms upon which the plaintiff was to receive a broker’s commission.
4. The plaintiff did not show the subject property to the eventual purchaser or her agent/husband, hereafter Schoenfeld, during the term of the contract, although she did show several other properties in the area to Schoenfeld.
5. Schoenfeld was looking for a house in Southern Berkshire in the ONE HUNDRED THOUSAND ($100,000.00) DOLLARS price range.
6. The subject property was listed for TWO HUNDRED EIGHTY-FIVE THOUSAND ($286,000.00) DOLLARS.
7. Schoenfeld made a phone call to Cooperman during the term of the party’s exclusive right to sell contract, to inquire about acreage and the purchase price of the subject property. When Cooperman replied TWO HUNDRED EIGHTY-FIVE THOUSAND ($285,000.00) DOLLARS, Schoenfeld, in his words, replied “Thanks, but no thanks” and hung up.
8. Cooperman did not relay this conversation to the plaintiff/appellee because he did not regard the call as an “inquiry.”
9. After the expiration of the party’s contract, Schoenfeld was able to obtain additional financing, thereby placing the subject property in their price range.
10. After the experation of the party’s contract, Cooperman and Schoenfeld entered into negotiations which resulted in a sale to Phillippa G. Schoenfeld by deed recorded on January 16, 1987 in the Southern Berkshire Registry of Deeds in Book 627, Page 224.
11. Cooperman did not pay the plaintiff/appellee a broker’s commission because she failed to comply with the terms of Rider #1 governing the payment of a commission.
At the close of the trial and before the final arguments, the defendant made the following requests for ruling:
1. Based on the evidence, Steven Schoenfeld’s communication to Stephen M. Cooperman in September, 1986 did not constitute an inqury regarding the sale of the defendant’s real estate. The Court denied defendant’s request for ruling number 1 in its judgment dated March 7, 1988.
2. The Exclusive Right to Sell Contract expired by its own terms on September 30,1986. The Court denied defendant’s request for ruling number 2 in its judgment dated March 7,1988.
3. As all meaningful negotiations between Stephen M. Cooperman and Steven Schoenfeld occurred after the expiration of the Exclusive Right to Sell Contract, no brokerage commission is due the plaintiff from the defendant or any related party. The Court denied defendant’s request for ruling number 3 in its judgment dated March 7,1988.
The Court made the following rulings entitled Findings of Fact, rulings of Law & Order for Judgment:
This is an action in two counts to recover a brokerage commission on the sale of real property. One count is based on an exclusive brokerage contract; the other on alleged violation of G.L. C.93A (the consumer protection statute). I find these facts:
1. The plaintiff, hereafter Eismann, is a licensed real estate broker with an office in Egremont in this County.
2. The defendant, hereafter Cooperman, is a resident of Rockville Centre in New York. She and her son and agent Stephen Cooperman are the sole stockholders of Alton Construction Co., a New York corporation. He is president and treasurer of the company.
3. Alton Construction is engaged in the business of building single family *101 homes. It owned a lot on Buttondown Lane off Long Pond Road in Great Barrington in this county and built a house on it for sale in 1986.
4. On March 24, 1986, the parties entered into an agreement entitled “Exclusive Right To Sell Contract.” The contract, including Rider #1 attached to it, provides in pertinent part:
. .. I/we, Alton Construction, owners in fee of the property located at lot number 4, Buttondown Lane, Great Barrington, Massachusetts hereby give and grant to Suzanne Eismann Real Estate, a member of Multiple Listing Service of Berkshire County Board of Realtors, Inc., the exclusive right to list and sell said property for the period of three (3) months from the date hereof, unless extended in writing by all parties involved, to sell the same at the price of $276,000.00, or at such other price, terms and conditions which I/we may consent.
If there be any sale whatsoever of said property or any part thereof by anyone including myself/ourselves before the expiration date of this contract, I/we hereby promise and agree to pay said listing broker for professional services rendered a fee of six (6%) percent of the sale price. If said property is sold by owner/owners after ninety (90) days after the expiration of this Contract to any person or entity to whom said contract had been presented or shown during the terms of this Contract, by any person or entity whatsoever, I/we agree to pay to said broker the same commission as if such sale had been during the term of the contract.
I/we agree to direct all inquiries to the listing broker....
And in consideration for this exclusive right to sell said property the said Listing Broker agrees to use his best efforts to secure a purchaser. ...
The following contingency in this listing is noted: This property will be advertised regularly in the following manner: Shoppers Guide, NewYork.Times, Berkshire Homebuyers Guide, “OPEN HOUSES’S....” Rider #1 provides in part that:
1. No brokerage commission shall be deemed earned unless and until such time as a valid contract of sale has been executed by the proposed purchaser and the undersigned, a closing has taken place and title has passed.
2.
3. Upon the expiration of this Exclusive Right to Sell Contract, broker shall submit to the seller, via certified mail and within five (6) business days, a written list of all persons or entities to whom said property had been presented or shown during the term of this Contract. A brokerage commission shall be due if said property is sold within ninety (90) days by the undersigned to only those persons or entities contained within the above mentioned list.
6. On August 22,1986, the Contract was amended in writing to change the price from $275,000.00 to $286,000.00 and extend the expiration date to September 30,1986.
6. On January 15, 1987, Alton Construction Corp. conveyed the premises described in the contract by warranty deed to Phillippa G. Schoenfeld of 500 East 77th Street, New York, NY for $270,000. The deed was recorded on January 16,1987 in Book 627, Page 224 at the Southern Berkshire Registry of Deeds in Great Barrington.
7. During the term of the contract, Eismann advertised the premises approximately eight times in the New York Times and the Shoppers Guide in *102 Great Barrington. She or her associates showed the premises to some twelve prospects. She did not at anytime comply with paragraph three of the Rider by mailing to Cooperman a list of the persons to whom the property had been shown.
8. Steven F. Schoenfeld is the husband of Phillippa G. Schoenfeld, who eventually purchased the premises on January 15, 1987. He is a Senior Vice President of a Wall Street investment banking firm. In January, 1986, he met Eismann and told her he was looking for a house in the Southern Berkshires in the $100,000.00 to $120,000.00 range. She showed him several properties in the area, but not the Cooperman house because the listed price was more than double the amount that he was prepared to spend. She did show him a house located about one hundred (100) yards from the Cooperman property.
9. On September 13, 1986, Schoenfeld was on Long Pond Road looking at another property. With him were his wife and a friend named Tobias. Tobias called his attention to the Cooperman house. They strolled around the property, then still under construction. Neither Eismann nor Cooperman were there or aware of their presence. Tobias had brought Schoenfeld to the area to see another property on Long Pond Road. When Schoenfeld expressed great interest in the house, Tobias said that Cooperman was the owner and gave him Cooperman’s phone number.
10. When he returned to New York after spending the week-end at Tobias’ home in Stockbridge, Schoenfeld placed a telephone call on September 15, 1986 to Cooperman at his home in Rockville Center. He said that Tobias had shown him a house on Buttondown Lane and inquired about acreage and selling price. When Cooperman replied, $285,000.00, Schoenfeld said “Thank you, but no thanks” and in his words “hung-up.” This was his first encounter with Cooperman.
11. Schoenfeld returned to the Berkshires on the next two weekends to inspect the Cooperman and other properties on Long Pond Road and in the town of New Marlborough. Eismann was unaware that Schoenfeld was interested in the property. He never told her of his trips to the site or his telephone conversation with Cooperman. Cooperman at no time told Eismann of Schoenfeld’s inquiries as the contract required.
12. On October 4,1986, Schoenfeld left a message on Cooperman’s telephone answering machine suggesting a meeting on October 6,1986 at a tennis club in New Jersey. On October 6,1986, they met and Schoenfeld made an initial offer of $250,000.00. Schoenfeld felt able to make this initial offer despite his earlier price limit of ONE HUNDRED TWENTY THOUSAND ($120,000.00) DOLLARS because his mother-in-law who had seen the property on September 29th agreed to assist with the financing.
13. On October 18, 1986, after further negotiation, Cooperman and Schoenfeld signed a Purchase and Sales Agreement for $270,000.00.
On the foregoing subsidiary facts, I find these ultimate or general facts:
1. Eismann and Cooperman entered into a valid exclusive brokerage agreement.
2. From May 24, 1986 to September 30, 1986, Eismann had the exclusive right to sell defendant’s property on Buttondown Lane, Great Barrington, Massachusetts for $285,000.00.
3. The property was presented or shown to Schoenfeld by his friend, Tobias, on September 13,1986 while the Eismann brokerage contract was in force.
4. The property was again presented to Schoenfeld and Cooperman by telephone on September 15,1986.
*103 5. Cooperman and Schoenfeld signed a Purchase and Sale Agreement on October 18, 1986 within the ninety (90) day extension of the brokerage contract.
6. Cooperman breached the contract by failing to bring Schoenfeld’s inquiries to the attention of Eismann.
7. Eismann breached the contract by failing to send Cooperman the names of the persons to whom the property had been presented or shown.
8. Cooperman did not commit any unfair deceptive acts or practices in his dealing with the plaintiff within the meaning of Massachusetts General Laws Chapter 93A,
9. Eismann is entitled to recover a commission of $16,200.00 from Cooperman.
As to the facts found by the Trial Judge there was ample evidence on which he could base his findings of fact and they were dispositive of this case. It is horn book law that the Appellate Division will not disturb findings of fact made by the Trial Justice.
“An Appellate Division decides only questions of Law and does not deal with the credibility or the weight of evidence, nor does it make decisions of fact.” Appleton v. Hickey (1972), 50 Mass. App. Dec. 17.
The defendant’s requests for rulings of law were all denied by the Trial Justice.
The defendant’s first request appears to be a request for finding of fact which the Trial Justice denied by finding just the opposite of the request and based on substantial evidence.
The defendant’s second request was also a request for a finding of fact and again one which the Trial Judge made based on substantial evidence.
And the third request is not a request for a ruling of law but a request for several findings of fact. Again the Trial Justice made these findings based on substantial evidence.
The Trial Justice remains the sole arbiter of the weight and credibility of the evidence and testimony. First Pa. Mortg. Trust v. Dorchester Savings Bank, 395 Mass. 614 (1985).
The short answers to the defendant’s request for rulings is that the Court simply did not find the requisite facts in the defendant’s favor and such factual findings that were made are clearly not erroneous and are thus beyond the scope of Appellate review. The Court finds that any error there be is harmless error and no prejudicial error being found the report is dismissed.
The appellant raised for the first time on review the issue of a condition precedent requiring performance by the broker before an obligation to pay a commission. It is settled that issues not raised and preserved for review are not to be heard by the Appellate Division.